# UTAH FUEL CO. v. INDUSTRIAL COMMISSION OF UTAH et al.

## No. 4287.   Decided March 15, 1926.   (245 P. 381.)

1. MASTER AND SERVANT—INDUSTRIAL COMMISSION IS VESTED WITH DISCRETIONARY POWERS IN MAKING AWARD FOR DEATH TO APPLICANT PARTLY DEPENDENT (COMP. LAWS 1917, § 3140, AS AMENDED BY LAWS 1921, c. 67). Under Comp. Laws 1917, § 3140, as amended by Laws 1921, c. 67, the Industrial Commission is vested with some discretionary powers in making awards in compensation cases, where applicant was only partly dependent for support on deceased employe, but such discretion must be exercised reasonably, and not arbitrarily and capriciously.

2. MASTER AND SERVANT—MAXIMUM AMOUNT OF COMPENSATION MAY BE AWARDED FOR DEATH OF FATHER AND SON, WHOSE JOINT EARNINGS · WERE REQUIRED TO SUPPORT FAMILY (COMP. LAWS 1917, § 3140, AS AMENDED BY LAWS 1921, c. 67). Where both father and son, whose joint earnings were required for support of family, met with death in same accident, *held* that maximum amount provided under Comp. Laws 1917, § 3140, as amended by Laws 1921, c. 67, may be awarded for each death.

3. EVIDENCE—IT IS A MATTER OF COMMON KNOWLEDGE THAT ADDITION OF ONE MORE TO HOUSEHOLD CONSISTING OF SEVERAL PERSONS DOES NOT ·NECESSARILY INCREASE COST OF MAINTENANCE IN PROPORTION TO ADDITION. It is a matter of common knowledge that, where household is maintained and provided for, consisting of several persons, to add one more does not necessarily increase cost of maintenance in proportion to one or more added.

Corpus Juris-Cyc. References:

[1]   Workmen's Compensation Acts C. J. p. 100, n. 70 New.

[2]   Workmen's Compensation Acts C. J. p. 99, n. 60 New.

[3-5]   Evidence 23 C. J. p. 59, n. 22.   Workmen's Compensation Acts C. J. p. 99, n. 66 New; p. 100 n. 74 New.

[6]   Workmen's Compensation Acts C. J. p. 117 n. 58 New; p. 124 n. 66 New.

[7, 8]   Judgments 34 C. J. p. 756 n. 64; p. 913 n. 43; p. 984 n. 36. Workmen's Compensation Acts C. J. p. 117 n. 56 New.

[9]   Workmen's Compensation Acts C. J. p. 55 n. 23; p. 56 n. 24; p. 127 n. 40.

[10]   Evidence 23 C. J. p. 59 n. 22.

4.  MASTER AND SERVANT—PARENT, AWARDED COMPENSATION FOR
    DEATH OF MINOR EMPLOYE, SHOULD BE ALLOWED BENEFITS RE-
    CEIVED FROM DECEASED, EITHER BY WAY OF CONTRIBUTIONS OR
    FROM HIS LABORS.  In determining amount of award for death
    of minor employe, Industrial Commission should consider case
    from every point of view, and, while actual cost of maintenance
    should be deducted, parent should also be allowed benefits re-
    ceived from deceased, either by way of contributions or from
    his labors.

5.  MASTER AND SERVANT—AWARD OF MAXIMUM COMPENSATION FOR
    DEATH OF MINOR EMPLOYE, ON WHOM FAMILY WAS PARTLY DE-
    PENDENT, HELD EXCESSIVE (COMP. LAWS 1917, § 3140, SUBD. 3,
    AS AMENDED BY LAWS 1921, c. 67).  Maximum award under
    Comp. Laws 1917, § 3140, subd. 3, as amended by Laws 1921, c.
    67, for death of minor employe, on whom family was partly
    dependent, held excessive, in view of evidence that cost of main-
    tenance of minor was not much less than his contributions.

6.  MASTER AND SERVANT—MODIFICATION WITHOUT NOTICE OF FIND-
    ING OF TOTAL DEPENDENCY TO FIND PARTIAL DEPENDENCY HELD
    UNAUTHORIZED, BUT WITHOUT PREJUDICE TO EMPLOYER, WITH
    KNOWLEDGE OF DEPENDENCY (COMP. LAWS 1917, § 3144).  Where
    Industrial Commission found that family was wholly dependent
    on deceased father and on separate application for compensation
    found that family was partly dependent on minor son, killed in
    same accident, held that its modification of its original finding
    on its own motion and without notice to employer, so as to find
    that family was only partly dependent on father, was in excess
    of its powers under Comp. Laws 1917, § 3144, but no prejudice
    was suffered by employer, in view of its knowledge that family
    was partly dependent on earnings of both father and son.

7.  JUDGMENT.  For doctrine of res adjudicata to apply, both the
    subject-matter and the parties must be the same.

8.  MASTER AND SERVANT—WIFE, ON APPLICATION FOR COMPENSA-
    TION FOR DEATH OF SON, HELD NOT BOUND BY PRIOR FINDING ON
    APPLICATION FOR COMPENSATION FOR DEATH OF FATHER.  Wife,
    applying for compensation for death of minor employe, held not
    bound by former finding of Industrial Commission on application
    for compensation for death of father, killed in same accident, that
    family was wholly dependent on father for support, since second
    proceeding, though between same parties, was an independent
    proceeding, involving a different subject-matter.

9. MASTER AND SERVANT—INDUSTRIAL COMMISSION'S FINDING OF DEPENDENCY CANNOT BE REVIEWED, UNLESS COMMISSION HAS APPLIED ILLEGAL STANDARD OR FOUND FACT WITHOUT EVIDENCE. Dependency, its extent, and persons entitled to compensation, are questions of fact for Industrial Commission in all cases, other than in cases of persons conclusively presumed to be dependent, and court cannot review commission's finding unless it has applied an illegal standard, or found a fact without evidence to support it.[1]

10. EVIDENCE—IT IS MATTER OF COMMON KNOWLEDGE THAT CHILDREN OF BOTH SEXES FREQUENTLY CONTRIBUTE TO SUPPORT OF FAMILY, THOUGH HUSBAND AND FATHER ALSO CONTRIBUTES HIS EARNINGS. It is matter of common knowledge that children of both sexes frequently contribute to support of a family, although husband and father also contributes his earnings.

Application by the Utah Fuel Company for a writ of review to review the award of the Industrial Commission in an application by Catherine Pelly, as guardian, etc., claimant, for compensation.

AWARD ANNULLED.

*Ferdinand Erickson, H. J. Binch,* and *Ray & Rawlins,* all of Salt Lake City, for plaintiff.

*Creighton King* and *King & Schulder,* all of Salt Lake City, *Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendants.

FRICK, J.

Upon the application to this court by the plaintiff, and pursuant to a writ of review issued thereon, the record of the proceedings had before the Industrial Commission of Utah, hereinafter called commission, has been certified to this court for review.

---

[1] *Wesley* v. *Ind. Comm.,* 209 P. 337, 60 Utah, 415.

The facts, briefly stated, in substance, are: On March 8, 1924, while employed in plaintiff's coal mine in Carbon county, in this state, Thomas Pelly, Sr., and Thomas Pelly, Jr., father and son, in the course of employment, were killed by a gas explosion occurring in said mine. Thomas Pelly, Sr., left surviving him his widow, Catherine Pelly, and five children, the oldest of whom was 10 years and the youngest 13 months. In due time, Catherine Pelly, on behalf of herself and her said children, made application to the commission, pursuant to the Workmen's Compensation Law of this state, upon a blank furnished by the commission, for compensation for the death of her said husband. The plaintiff company immediately appeared before the commission, admitted all the facts, and consented that the comission might make an award in favor of the widow and said children. It appears that no evidence was introduced in support of the application, but the commission nevertheless made a finding that the widow and children were wholly dependent upon the deceased Thomas Pelly, Sr., for their support, and pursuant thereto made an award of the highest amount and the longest time permitted by our statute in case of death, namely, $16 per week for a period of 312 weeks, payments to commence from the date of the death of said Thomas Pelly, Sr. The plaintiff complied with the order of the commission in making payments. Thereafter, on October 17, 1924, said Catherine Pelly, as guardian of the children aforesaid, made a second application to the commission, in which she asked that she be awarded further compensation for herself and for said minor children for the death of Thomas Pelly, Jr., the son who, as aforesaid, was killed at the same time and in the same accident that his father, Thomas Pelly, Sr., was killed. In the second application she averred that she and said children were partly dependent upon said Thomas Pelly, Jr., for support. The plaintiff appeared and contested the right of Mrs. Pelly to additional compensation, both for herself and for said children. A hearing was duly had upon the second application, at which considerable evidence was pro-

Certiorari

duced in support of said application. After the hearing was concluded, the commission found that Mrs. Pelly and her said children, at the time of the death of Thomas Pelly, Jr., were partly dependent upon him for support, that his wages amounted to $5.85 per day, and that he had given all of his earnings to Mrs. Pelly, his mother, and that the same had been appplied to the support of herself and her said children, in addition to the wages earned by the deceased Thomas Pelly, Sr., the father of said children, whose wages were slightly in excess of $225 per month. The commission accordingly made a further award, and ordered the plaintiff to pay, for the support of Mrs. Pelly and said children, the sum of $16 per week for a period of 312 weeks, as compensation for the death of Thomas Pelly, Jr., payments to commence from his death, as aforesaid.

The record also discloses that on the last hearing, and before making the said award, the commission, upon its own motion, and without notice to the plaintiff, modified the finding made upon the first application (that Mrs. Pelly and her said children were wholly dependent for their support upon Thomas Pelly, Sr.), to the effect that they were only partly dependent upon him for their support. The record, therefore, as it now stands, is to the effect that Mrs. Pelly and her said children at the time of the death of the father and the son were partly dependent upon each of them for their support.

The plaintiff contends (1) that the commission exceeded its power or jurisdiction in making the second award in favor of Mrs. Pelly and the children; (2) that the award made upon the second application "is excessive and not supported by the evidence"; and (3) that the commission acted in excess of its power or jurisdiction in modifying the finding made upon the first application as hereinbefore stated.

We shall consider the foregoing objections in the order we have stated them.

The plaintiff vigorously insists that in any case where the survivors are wholly dependent for support upon a de-

ceased employe but one award is permissible, which may not exceed the amount specified in Comp. Laws Utah 1917, § 3140, as amended by chapter 67, Laws Utah 1921. Section 3140, subds. 2 and 3, read as follows:

"2. If there are wholly dependent persons at the time of the death, the payment shall be 60 per cent of the average weekly wage, but not to exceed a maximum of $16 per week, and to continue for the remainder of the period between the date of the death, and six years after the date of the injury, and not to amount to more than a maximum of $5,000 nor less than a minimum of $2,000."

"3. If there are partly dependent persons at the time of the death, the payment shall be 60 per cent of the average weekly wages, but not to exceed the maximum of $16 per week, and to continue for all or such portion of the period of six years after the date of injury, as the commission in each case may determine, and not to amount to more than a maximum of $5,000, provided that the benefits provided for in this subsection shall be in keeping with the circumstances and conditions of dependency existing at the date of injury, and any amount awarded by the commission under this section must be consistent with the general provisions of this act."

It will be observed that the amount that may be awarded under subdivision 2 is 60 per cent of the average weekly wage, but in no event can the award exceed $16 per week, nor can it be in excess of $5,000, nor for a period exceeding 6 years or 312 weeks. Under that subdivision, however, the award cannot be less than $2,000. It will also be noticed that the weekly allowance of $16 for 312 weeks falls a little short of $5,000. Under subdivision 3 of the section aforesaid, which applies to survivors who are only partly dependent upon the deceased employe for support, the weekly amount, and the gross amount, and the period of time may, however, be the same as under subdivision 2. No minimum amount is specified under subdivision 3, and that subdivision contains a proviso:

"That the benefits provided for in this subsection shall be in keeping with the circumstances and conditions of dependency existing at the date of injury, and any amount awarded by the commission under this section must be consistent with the general provisions of this act."

The statute therefore vests the commission with some discretionary powers in making the award where the applicant was only partly dependent for support upon the deceased employe. The discretion must, however, be exercised reasonably, and not arbitrarily and capriciously, and should always be in conformity with the general provisions of the act. Under subdivision 3, the question always arises, To what extent was the applicant dependent upon the deceased employe for support at the time of his death or injury? Section 3140, supra, in another subdivision, also provides that, in case of the death of a husband and father, who, at the time of death, lives with his wife and children, the wife and female children under the age of 18 years, and the male children under the age of 16 years, "shall be presumed to be wholly dependent for support upon the deceased employe." In every case, therefore, where it is made to appear that the deceased employe left surviving him a wife, or a wife and children as aforesaid, with whom he lived at the time of the injury resulting in death, the presumption is that such wife or wife and children were wholly dependent upon the deceased for their support. In the case at bar, therefore, when the first application was made, the plaintiff admitted all the facts entitling Mrs. Pelly and her children to an award, and the commission, acting upon the presumption of law, made a finding that she and the children were wholly dependent upon the deceased Thomas Pelly, Sr., for their support, and accordingly made an award to conform to the presumption and finding.

As before stated, the plaintiff, at the hearing before the commission upon the second application, insisted, and in this court insists, that, inasmuch as the commission made the finding and award as aforesaid, it was powerless or without jurisdiction to make the second award. Is that contention sound? It may be that, where the record shows that the applicants were wholly dependent upon the deceased employe for their support—if by the phrase "wholly dependent" is is meant that they were dependent upon him alone and upon

no one else—the contention of plaintiff would technically be correct. It is also true that the courts generally construe the phrase "wholly dependent" to mean that the applicants were in fact dependent for their support upon the deceased alone and upon no one else. The writer confesses that he was strongly inclined to the view that all that was meant by the phrase "wholly dependent" was that the applicants relied upon the whole earnings of the deceased employe for their support, and that they were presumed to be entitled to the 60 per cent of the whole earnings without further question, and not that they did not also need or receive additional support from some one else. I confess, however, that, as before stated, the courts generally construe the phrase as indicated above. Our statute, however, it seems to me, does not necessarily require a construction that the applicant or a family may not receive support from more than one person at the same time, and that, in case such applicant or family does receive support from two employes, and both meet death in the same or in different accidents while in the course of their employment, the applicants may not be awarded compensation for the death of both so long as the amount of the award is limited to the maximum amount specified in the statute; that is, not to exceed $16 per week or $5,000 for each death. Where, therefore, as here, both father and son meet death in the same accident, and it is made to appear that it required the joint earnings of both to support the family, I cannot perceive any good reason why the applicant may not receive the amount provided by the statute for each death, namely, not to exceed $5,000 for each death or $10,000 for both. It certainly is the purpose and intent of our statute to restore to the bereaved wife and family the maximum amount specified in the statute, provided always they can show that they have suffered in their support to that extent. There certainly is nothing in our statute which prevents the dependent from being awarded such an amount as he may have received from any deceased employe, if the same was necessary for the support of the

dependent and is not in excess of the amount allowed by the statute.

Such is also the holding in the case of *Hodgson* v. *Owners of West Stanley Colliery,* reported in 3 B. W. C. C. 260. The decision in that case was handed down by the House of Lords of England, which constitutes the highest tribunal of England. In that case the father and two sons met death while in the employ of the Owners of the Colliery, working in its mine, and it was held that the surviving dependents were not limited to the maximum amount the statute allowed for the death of their father, but, in addition to the maximum amount allowed for the death of the father, the surviving dependents could also be awarded such an amount for the death of each son as each may have contributed to, and which was necessary for, the support of the surviving dependents. It is held that, while the amount specified in the statute for each death may not be exceeded, yet in case more than one is killed, all of whom have contributed to the support of the surviving dependents, and where the amount so contributed was necessary for their support, the maximum amount may be allowed for the death of the father, and the amount that was contributed by the sons may also be awarded to the surviving dependents. We can see no reason why the foregoing doctrine may not be applied in a proper case, and we are of the opinion that the case at bar is a proper one in which to apply the same, provided the applicants are not barred by the finding of the commission made on the first application—that they were wholly dependent for their support upon the father. We shall consider that question under the third proposition hereinbefore stated.

The plaintiff, however, contends that the award is not only not supported by competent evidence, but that it is contrary to the evidence. In that connection it is contended that, while it is true that the evidence shows that Thomas Pelly, Jr., the son, gave his earnings to his mother, and that she applied the same for the support of the family, yet the evidence also shows that the cost of maintaining the son was

almost equal to the amount he contributed to the mother for the purpose aforesaid. We shall not go into the evidence in detail. Plaintiff's own records show that the amount paid by it to Thomas Pelly, Jr., during the year immediately preceding his death, after making all deductions, amounted to $805, or a little in excess of $67 per month. The mother had estimated it a little higher, but we think that the record of the plaintiff should prevail in that regard. The evidence is undisputed that the son paid all of it to his mother, and that she supplied him with the necessary clothing, board, and gave him a little spending money from time to time, and that he boarded with the rest of the family, consisting of the father, mother, and six children, including himself. According to estimates made by the mother upon cross-examination, and from other estimates, plaintiff contends that the cost of maintaining the son during the year aforesaid amounted to $659.50, leaving a balance of only $121.60, which in any event could be considered as a contribution from him for the support of his mother and his brothers and sisters. Counsel for the applicants, however, insist that the cost of maintaining the son should not be considered and should not be deducted from his earnings, but that the only basis for determining the amount that should be awarded is the gross amount he earned and gave to his mother, and which she used in defraying the cost of maintaining or supporting the family. The question thus presented is one that has not heretofore been presented to or considered by this court. The decisions of the courts of last resort, where the question has been considered, unfortunately are in conflict.

The plaintiff, among other cases, cites *Engberg* v. *Victoria Copper Co.*, 167 N. W. 840, 201 Mich. 570; *Federal Mut. Liability Co.* v. *Ind. Acc. Comm.*, 199 P. 796, 186 Cal. 517; *Moll* v. *City Bakery*, 165 N. W. 649, 199 Mich. 670; *Milwaukee Basket Co.* v. *Wiecki*, 181 N. W. 308, 173 Wis. 391; *Conners* v. *Public Serv. Elec. Co.*, 97 A. 792, 89 N. J. Law, 99; *Gonzales* v. *Chino Copper Co.*, 222 P. 903, 29 N. M. 228; *Pushor* v. *Am. Ry. Exp.*, 183 N. W. 839, 149 Minn. 308;

*Bohlen-Huse C. & I. Co.* v. *McDaniel,* 257 S. W. 848, 148 Tenn. 628; *State ex rel.* v. *District Court,* 159 N. W. 755, 134 Minn. 324.

In the foregoing cases it is in effect held that where compensation is sought for the death of a minor whose earnings were paid to the father, and which were used in defraying the expenses of maintaining or supporting the family, including the minor himself as a part thereof, the reasonable cost of maintaining the minor should be deducted and only the balance remaining after deducting such cost of maintenance, if any, should be considered in determining the amount of the contributions as a basis for an award.

Upon the other hand, counsel for the applicants cite the following among other cases: *In re Murphy,* 105 N.. E. 635, 218 Mass. 278; *In re Peters,* 116 N. E. 848, 65 Ind. App. 174; *Richardson Sand Co.* v. *Ind. Comm.,* 125 N. E. 751, 291 Ill. 95; *Chicago, W. & F. Co.* v. *Ind. Comm.,* 135 N. E. 784, 303 Ill. 540; *Peabody Coal Co.* v. *Ind. Comm.,* 143 N. E. 90, 311 Ill. 338; *People's Hardware Co.* v. *Croke,* 118 N. E. 314, 66 Ind. App. 340; *Metal Stampings Corp.* v. *Ind. Comm.,* 121 N. E. 258, 285 Ill. 528. In the cases last referred to, it is held that, where compensation is sought for the death of a minor who lived in the applicant's family as a member thereof, and who contributed his earnings for the support of the family, the cost of maintaining such minor should not be deducted from his earnings in determining the amount that should be awarded to the dependents.

We shall not attempt to reconcile the conflicting decisions. It is, however, not easy for us to understand how A, a minor, who meets death in the course of his employment, and who at and prior to his death was a member of a family for the support of which he contributed his earnings amounting to $10 a week, and where the cost of his maintenance amounted to $5 a week, which was paid out of the fund used for the support of the family to which he contributed, can be said to have contributed to the support of the family any amount in excess of $5, the net amount of his contribution. True, it

is said in some of the decisions that the father is legally
bound to support the minor, and anything that the minor
contributes reduces the amount the father has to provide
out of his own earnings to support the minor. If that be the
view taken, however, then it must also be conceded that the
father is not and was not dependent upon the minor at all
for his support, but the minor was manifestly a dependent
of the father. The Supreme Court of Illinois, in *Chicago,
W. & F. C. Co.* v. *Ind. Comm.*, supra, in our judgment, cor-
rectly stated the law respecting dependency. In the course
of the opinion, the court said:

"Dependency, and the extent thereof, are questions of fact for the
Industrial Commission, and the courts will not interfere when such
facts are controverted, unless it can be said that the finding of the
commission is against the manifest weight of the evidence. *Otis Ele-
vator Co.* v. *Industrial Com.*, 134 N. E. 19, 302 Ill. 90; *Keller* v. *Indus-
trial Com.*, 135 N. E. 98, 302 Ill. 610. The test for determining de-
pendency is whether the contributions of the deceased were relied upon
by the dependent for his means of living as determined by his posi-
tion in life, or whether dependent was to a substantial degree sup-
ported by the employe at the time of the employe's death. *Pratt Co.*
v. *Industrial Co.*, 127 N. E. 754, 293 Ill. 367."

We are unable, however, to reconcile the foregoing state-
ment with what follows in the same opinion, namely:

"A child contributes to the support of its parents, within the mean-
ing of the Compensation Act, when it contributes a substantial sum to
the support of the family, although this sum is less than the actual
cost and expense of its support and maintenance, where the child is
a minor or is in a condition to demand legal support from its parent.
*Richardson Sand Co.* v. *Industrial Com.*, 129 N. E. 751, 296 Ill. 335."

If it be true that under the Illinois Compensation Act
(Hurd's Rev. St. 1919, c. 48, §§ 126-152i) it is not necessary
to establish that the parent was dependent upon the earnings
of the minor, then it must also be true that what constitutes
dependency is wholly immaterial. Moreover, if a parent may
be awarded compensation for the death of his minor child
under the Illinois Compensation Act without being depend-
ent upon the earnings of such child, then the award must
proceed upon the theory of damages under Lord Campbell's

Act, and not what we conceive to be the basis necessary for compensation under our Workmen's Compensation Act. While in the case of *People's Hardware Co.* v. *Croke,* supra, the Appellate Court of Indiana holds to the doctrine that the cost of maintaining the minor should not be deducted from his contributions, yet that court also holds that, if the deceased minor had paid the cost or expenses of his maintenance himself, "a different question would have been presented." We cannot understand how there would be any difference, either in a moral or a legal sense, whether the parent received the entire earnings of the minor and devoted a part thereof to the support of the family and the remainder to the expense of maintaining him, or whether the minor paid the necessary expenses or cost of maintenance himself and paid the balance to the family. In either event, only the surplus over and above the cost of maintaining the minor could be devoted to the support of the rest of the family. We can readily understand how, in case a minor, who is supported by his parent, merely suffers an injury, by reason of which he is prevented from earning any wages, the cost of maintenance should not be deducted. In such event the cost of maintenance which the parent must provide continues while the earnings entirely cease, while in case of the death of the minor, as in the case at bar, the cost of maintenance entirely ceases at the same time that the earnings cease to be contributed. If, therefore, no deduction for maintenance is allowed, the parent is compensated for an amount in excess of what he actually received from the son, which, in our judgment, is not contemplated by our Workmen's Compensation Act.

We are of the opinion that the doctrine announced by the House of Lords, in the case of *Tamworth Colliery Co.* v. *Hall,* 4 B. W. C. C. 313, should be applied in cases like the one at bar. It is there held that, while the cost of maintaining the minor should be deducted from his gross earnings upon the one hand, upon the other hand assistance that he may have rendered the parent, the manner of living in the

home, and all other circumstances should be taken into account in determining the actual benefits received by the parent and the actual loss sustained by him by reason of the death of such minor. In this case, therefore, what it would cost to maintain the son in an ordinary boarding house is not the criterion for determining the cost of maintaining him with the rest of the family. As pointed out by Mrs. Pelly, when boarding at home with the rest of the family, young men are not as exacting as they are in a boarding house. In the former case they also may share a bed with one of the family, which they would not do in case they were required to pay board in a boarding house. Moreover, it does not follow that, where the son is one of eight constituting the family, the cost of maintaining him is necessarily one-eighth in excess of what it would have been if only seven had been kept in the family. It is a matter of common knowledge that, where the household is maintained and provided for, consisting of several persons, that to add one more does not necessarily increase the cost of maintenance in the proportion to the one or more added. Moreover, Mrs. Pelly's testimony that, in view of the tender years of the children, the son was of great assistance to her in carrying on the household, is not, and perhaps could not be, disputed. That he helped her in many ways in doing the housework is clearly made to appear. That such should be the case one can readily understand. As pointed out by the House of Lords in the case last above referred to, all such matters should be kept in mind and considered in determining the actual benefits received by the parents, and the amount that should be awarded for the loss sustained by the death of the minor. True, in this case, the estimates respecting the cost of maintenance for the son as made by Mrs. Pelly herself are quite large. As pointed out by the Supreme Court of Minnesota, however, in *Pushor* v. *American Ry. Exp. Co.*, supra, such estimates are not always trustworthy nor conclusive. As there suggested, and as pointed out in the case cited from the House of Lords, supra, the

commission, in fixing the amount that should be awarded, should consider the case from every point of view, and, while the actual cost of maintenance should be deducted, the parent should also be allowed the benefits he received from the deceased, either by way of contributions or from his labors. That, in our judgment, is the true doctrine. In the case at bar, therefore, the commission, under the undisputed evidence, clearly exceeded its power in fixing the award at the maximum sum allowed by the statute. In circumstances like those in the case at bar, the statute provides:

" *   *   * The question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in death.  *   *   * "

The commission in such cases, therefore, may not indulge any presumptions, but must be governed entirely by the facts in each case. In this case, therefore, the commission should have carefully considered the cost of maintaining the deceased son in connection with the cost of maintaining the whole family, and should also have considered to what extent he assisted his mother in maintaining the household and the pecuniary benefits, if any, she derived from such assistance, and should have determined the monetary value of all the foregoing elements, and, after doing that, it should have deducted the actual cost of maintenance therefrom, and the difference remaining, if any, should have been taken as the basis for fixing the amount of the award. While, under the evidence, the amount awarded by the commission is excessive, it, in our judgment, is nevertheless not as greatly in excess as plaintiff contends it is. While we have neither the power nor the inclination to determine the amount that should be awarded, yet we have no hesitancy in stating that, in view of the whole evidence as it now stands, a weekly allowance of some amount less than the maximum should have been made.

This brings us to the third proposition, namely, Is the act of the commission in modifying the finding made on the

application for compensation for the death of the husband and father void or merely irregular? Comp. Laws of Utah 1917, § 3144, provides:

"The powers and jurisdiction of the commission over each case shall be continuing, and it may from time to time make such modification or change with respect to former findings or orders with respect thereto as in its opinion may be justified."

The finding in this case was modified pursuant to the provisions of that section. There was no doubt respecting the continuing jurisdiction of the commission. In making modifications of the orders or findings, therefore, the commission does not necessarily act without or in excess of its jurisdiction. It may, nevertheless, act in excess of its powers where, as here, it makes a change in a finding or order, which materially affects the rights of an interested party, without notice to such party, and without an opportunity to be heard. Any material change that is made in a finding of fact, or in an order touching an award, must necessarily depend upon some existing fact or facts. While it is true that the commission may possess what it deems to be ample or even conclusive evidence of such a fact or facts, yet it does not follow that the party interested must agree with the commission's conclusions, or that he may not contest or dispute the facts as claimed by it. Moreover, where the modification or change affects a substantial right of the aggrieved party, it should be given the benefit of a hearing and a right to review the decision of the commission in making the modification or change. We are of the opinion, therefore, that, in making the modification in this case without notice to the plaintiff, and without giving it an opportunity to be heard, the commission exceeded its powers. The question, however, is, Has the plaintiff been prejudiced in any way or to any extent by the modification? The evidence is uncontroverted, indeed the records of the plaintiff conclusively show, that Mrs. Pelly and the children were dependent upon the earnings of both the father and the son at and prior to the time of the death of both of them. When

the son made application for employment in the plaintiff's mine, he was required to obtain written permission from the school superintendent of Carbon county to do so. Such permission was granted only in case the son's earnings were necessary for the support of the family of which he was a member. In his application to the plaintiff for employment, therefore, he was asked the question why he sought employment, and the answer was that he did so because his earnings were necessary to the support of his father's family, in which he lived. Plaintiff, therefore, always knew that the family needed and relied upon the earnings of both the father and the son for support, and hence was partly dependent upon the earnings of both of them. The modification merely reflected the actual facts as they were known to the plaintiff and upon which the employment of the son was permitted. Plaintiff, therefore, was not, and in the nature of things could not have been, prejudiced in any way nor to any extent by the modifications made by the commission.

Plaintiff, however, insists that Mrs. Pelly is conclusively bound by the former findings that she and the children were wholly dependent upon the father for their support. In view of that, it contends that they could not also have been partly dependent upon the son for support, and hence the award is a nullity. We cannot yield assent to plaintiff's contention in that regard. The second proceeding, although between the same parties, was nevertheless an independent proceeding, and involved a different subject. The rule respecting res adjudicata is well stated by the Supreme Court of Wisconsin in *Goodwin* v. *Snyder*,      7 44 N. W. 746, 75 Wis. 450, where it is stated thus:

"To make such record of a former adjudication evidence in a subsequent case, the subject matter must not only be the same, but the parties must be the same."

If, therefore, either the subject of the action or the parties are different, the doctrine of res adjudicata does not apply. In *People* v. *Johnson*, 38 N. Y. 63 97 Am. Dec. 770, followed

in *House* v. *Lockwood*, 33 N. E. 595, 137 N. Y. 268 and in *Stokes* v. *Foote*, 65 N. E. 176, 172 N. Y. 341, it is held:

"That in order that a judgment be res adjudicata it is not enough that the party producing a record showing a judicial determination of the same question litigated in his favor, but it must also appear that it was rendered upon the merits, upon a material point, and substantially upon the same facts presented in the subsequent case."

If, therefore, we should consider the findings of the commission the same as those in a court of justice of general jurisdiction, it nevertheless cannot be contended that the facts respecting dependency were the same upon the present application that they were upon the first respecting the death of the father. Nor can it be successfully contended that the question of whether the family was wholly or only partly dependent upon the father was either in issue or litigated in the first application. Neither was it necessarily involved since, as we have seen, the family was entitled to the full amount allowed on the first application, whether they were wholly or only partly dependent upon the father for support. It was, however, involved on the second application. Upon the first application the commission based its so-called finding, not upon the evidence, but upon the presumption that, where a husband lives with his wife and family, it is presumed as a matter of law that the wife and the children under a certain age are wholly dependent. We are clearly of the opinion, therefore, that the finding made upon the first application is not conclusive upon the second, and that, in view of the undisputed evidence, Mrs. Pelly is entitled to be awarded compensation for the death of the son in such an amount as she, under the facts and circumstances, may be shown to be entitled, in view of the law as hereinbefore stated.

We desire to state, in conclusion, that, while a number of our decisions are cited, none of them has any controlling influence upon this decision, and we have therefore refrained from referring to them. Again, the only case in which a question analogous to the one here presented was decided

Certiorari

was handed down some time before the present statute was amended, and therefore that decision cannot be considered under the present statute.

Some considerable time after the foregoing opinion was written, counsel for plaintiff called our attention to the case of *London Guarantee & Acc. Co.* v. *Ind. Comm.*, of Colo. (Colo. Sup.) 242 P. 680, which, it is contended, directly bears upon the power of the commission in the instant case to make an award in favor of Mrs. Pelly and her children for the death of Thomas Pelly, Jr. We have carefully examined and considered the opinion in the foregoing case, and, after doing so, are forced to the conclusion that, in view of the difference between the Colorado statute upon which the decision is based and our own, the Colorado decision cannot control the decision in the instant case. Indeed, a careful reading of the opinion in that case discloses that the Supreme Court of Colorado based its decision entirely upon the language of the Colorado statute. The court, however, intimates that, if the language of the statute had been like that of our statute, a different result would probably have been reached. Under the Colorado statute it is conclusively presumed that the wife and children are wholly dependent upon the father for support, while under ours the presumption that they are so is a rebuttable one. In other words, according to the construction, the Supreme Court of Colorado felt forced to put upon the statute of that state the presumption of sole dependency upon the father is not rebuttable, regardless of what the fact in that regard may be, while, under our statute, the presumption prevails only until the facts are shown to be otherwise. Under the Colorado statute, therefore, the presumption prevails, regardless of the facts, while under our statute it cannot stand against the actual facts as they may be established in each case. As is well said in 1 Schneider, Work. Comp. § 370:

"Dependency, its extent, and persons entitled to compensation are questions of fact for the Industrial Commission to determine in all cases other than the cases of those persons conclusively presumed to

be dependent, and, unless the commission has applied an illegal standard, or found a fact without evidence to support it, the court cannot review the finding."

The foregoing statement of the law was approved by this court in *Wesley* v. *Ind. Comm.*, 209 P. 337, 60 Utah, 415. To hold that a family consisting of wife and a number of minor children are dependent upon the husband and father only, and upon no one else, and that the fact must conclusively be presumed to be so in all cases, is, in the judgment of the writer, carrying the doctrine of conclusive presumption too far. It is a matter of common knowledge that children of both sexes frequently contribute to the support of a family, although the husband and father as the head of the family also contributes his earnings. When a case arises, therefore, where the facts clearly show that another member of the family also has contributed to the support of the family, and that the family was dependent upon the contributions, and by reason of some injury or death the contributions are withdrawn, why attempt to control the matter by a presumption which is in the very teeth of the truth? There certainly is no public policy involved which requires that the actual facts should not be made to appear. A rebuttable presumption is fair, just, and practical, and can be applied so as to reflect justice in all cases, while a conclusive presumption must necessarily in some cases result in injustice.

The award as it now stands, therefore, should be, and it accordingly is, annulled.

GIDEON, C. J., and THURMAN, CHERRY, and STRAUP, JJ.